UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ELLEN L. TRUMPLER, | ) | |
| Plaintiff, | ) | Case  No. CV 08-6514 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL ASTRUE | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for disability insurance benefits on October 17, 2006, alleging that she had been disabled since October 26, 2005 due to traumatic brain injury, chronic left shoulder, low back pain, bursitis, headaches, sleep apnea, fatigue, joint problems, cardiac problems, arthritis and sciatica. [JS 2; Administrative Record ("AR") 19, 79]. Plaintiff's application was denied initially and on reconsideration. [JS 2; AR 19, 56-61]. Plaintiff requested an administrative hearing, which was conducted before Administrative Law Judge Dean K. Franks (the "ALJ") on November 6, 2007. [JS 2; AR 31-52]. Plaintiff,

1   who was represented by an attorney, testified on her own behalf. [AR 33-50]. Testimony also was received

2   from Dr. June Hagan, a vocational expert. [AR 50-51]. At the conclusion of the hearing, the ALJ left the

3   record open for thirty days to permit plaintiff's attorney to provide additional treating source records. [AR

4   51].

5       On March 20, 2008, the ALJ issued a written decision denying plaintiff's application for benefits.

6   [AR 16-19]. The ALJ found that plaintiff had the following severe impairments: obesity, asthma, and a left

7   knee meniscal tear. [AR 21]. The ALJ determined that plaintiff's impairments, singly or in combination,

8   did not meet or equal an impairment included in the Listing of Impairments (the "Listing"). [AR 24]. See

9   20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that plaintiff retained the residual functional

10  capacity ("RFC") to perform a narrowed range of light work in areas where she is not exposed to

11  concentrated dust, fumes and other environmental pollutants. Relying in part on the vocational expert's

12  testimony, the ALJ found that plaintiff could perform her past relevant work as a word processor or clerk

13  typist. [AR 24, 28 ]. The ALJ therefore concluded that plaintiff was not disabled at any time up to the date

14  of his decision. The Appeals Council denied plaintiff's request for review. [AR 8-11].

15                          **Background**

16      Plaintiff was born in 1954, and she was 53 years old when the ALJ issued his decision. [AR 33, 75].

17  Plaintiff graduated from college with a major in psychology. [AR 34]. Between 1989 and 2005, plaintiff

18  worked as a word processor (1989-1991, 1999-2001), typist (1992-1994), secretary (1995-1997, 1998-1999),

19  and office assistant (2004-2005). [AR 21, 80].

20      Between February and June 2006, plaintiff was treated at Kaiser Permanente Hospital for back and

21  leg pain. [AR 22, 178-198]. In February 2006, plaintiff presented with complaints of low back pain, off and

22  on for about two years without any history of trauma or heavy lifting, and persistent right thigh pain after

23  a recent fall. Plaintiff denied any radiating pain, numbness, tingling, or weakness. [AR 22, 186-188]. On

24  examination, plaintiff exhibited mild lumbar spine tenderness and bilateral hamstring tightness, but no range

25  of motion deficits, loss of motor strength, or positive straight leg raising signs. [AR 22, 184]. Lumbar spine

26  x-rays showed only minimal degenerative changes. [AR 22, 184].

27      In April 2006, plaintiff consulted Dr. Paul Bellamy, a pulmonary specialist, for complaints of asthma,

28  gastroesophageal reflux disease ("GERD"), and allergic rhinitis. [AR 22, 194-197]. Dr. Bellamy diagnosed

plaintiff with obesity, partially controlled allergic rhinitis and GERD, intermittent asthma in remission, and shortness of breath. [AR 22, 196].  However, Dr. Bellamy considered plaintiff's asthma to be a "lesser problem," and thought that her shortness of breath was more likely due to her obesity and lack of conditioning.  [AR 22, 196-197].  Dr. Bellamy recommended "more aggressive aerobic exercise" for "cardivasuclar and pulmonary conditioning" as well as weight loss.  He did not believe that pulmonary rehabilitation was indicated at that time. [AR 22, 197].

Plaintiff reported being hospitalized for chest pain and shortness of breath in June 2006, but she failed to provide hospital records. [AR 22].  From July 2006 through November 2006, plaintiff participated in respiratory therapy sessions designed to increased her endurance by use of a stationary bicycle, treadmill, and other exercise activities. [AR 22, 200-328].

Between February 2006 and October 2007, plaintiff was followed by Dr. Kevin Arian for chest pain, asthma, hypertension, and GERD. [AR 363-374].

On October 31, 2007, plaintiff was examined by Dr. Jerome Friedland for left knee pain. [AR 23, 376-380].  On the same date,  Dr. Friedland completed a physical RFC questionnaire stating that plaintiff had a diagnosis of left knee meniscal tear with positive clinical findings in the left knee of limited range of motion, tenderness, muscle spasms, swelling, and abnormal gait. [AR 376-380]. Dr. Friedland opined that plaintiff could sit for seven hours and stand or walk for up to one hour, cannot lift or carry more than five pounds occasionally, has problems performing repetitive reaching, handling, and fingering, and cannot perform any postural movements involving bending her knee.  [AR 23, 376-380].

Plaintiff underwent a psychiatric evaluation in January 2007 with Dr. Mehoob Ali Makhani, to whom she complained of experiencing depression as a result of her physical problems. [AR 23, 329-332].  Dr. Makhani conducted a mental status examination, which was within normal limits except for depressed mood and congruent affect. [AR 23, 329-331].  Plaintiff stated that she drove herself to the evaluation, lived with her father, performed household chores, handled the family finances, and went to church, on small outings, and to the store.  [AR 23, 329-330].  Dr. Makhani diagnosed plaintiff with depressive disorder, not otherwise specified, rule out adjustment disorder, chronic with depressed mood. He noted that plaintiff exhibited no difficulty interacting with him or the clinic staff, could focus and maintain attention, demonstrated an

3

adequate level of personal independence, had no difficulty maintaining composure and even temperament, and was intellectually and psychologically capable of performing activities of daily living. Dr. Ali Makhani concluded that plaintiff was able to appropriately relate to the public, co-workers, and supervisors, and handle the stresses and demands of gainful employment within her intellectual and physical limitations. [AR 23, 332].

During the hearing, plaintiff testified that she suffered from asthma, a sleep disorder, extreme pain in her left knee and pain in other joints, and that she had a history of depression and anxiety. [AR 40-42, 44, 46]. Plaintiff stated that she has pain in her hand, her thumb joints, wrists, and both knees and has had "hip bursitis, pain in both hips, pain in the shoulders, neck and back and feet." [AR 48]. She testified that she was taking Motrin 800 milligrams three times a day for pain; Singulair for asthma; Zyrtec, an antihistamine, alternating with Allegra D, another antihistamine; a Qvar steroid inhaler for asthma; Protonix for GERD; Albuterol as a "rescue inhaler"; and Ambien for sleep problems. [AR 40-43]. Plaintiff said that she had stopped taking her blood pressure medication. She said that she had briefly taken antidepressants about fifteen years earlier. [AR 40, 42]. When asked why she could not work, plaintiff replied, "It's a combination of the pain sometimes, fatigue, and some mental confusion all working together." [AR 42]. Plaintiff testified that the pain in her left knee affects her ability to walk and move. [AR 46-47]. Plaintiff said that she had good and bad days, and that in a month she generally had four "very bad" days when she wanted to stay in bed and, if she did get out of bed, she stayed inside the house. [AR 49].

In response to a hypothetical question posed by the ALJ, the vocational expert, Dr. Hagan, testified that an individual closely approaching advanced age who has a college education, can lift ten pounds frequently and twenty pounds occasionally, is limited to occasional crouching, kneeling, stooping, and crawling, and who needs to "avoid concentrated exposure to dust, fumes, [and] pollutants" would be able to perform all of plaintiff's past relevant work. [AR 50].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more

than a mere scintilla but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954.  The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision.  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas, 278 F.3d at 954 (citing  Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Statement of Disputed Issues**

The disputed issues are (1) whether the ALJ properly considered the medical opinion of the examining physician, and (2) whether the ALJ properly considered plaintiff's testimony about her subjective limitations. [JS 3].

**Discussion**

**Examining physician's opinion**

Plaintiff contends that the ALJ's RFC finding is inconsistent with the opinion of the Commissioner's consultative examining physician, Dr. Ursula Taylor. [See JS 4-12; AR 4].

Dr. Taylor conducted an internal medical evaluation of plaintiff on January 30, 2007.  [AR 333-338].  Dr. Taylor observed that plaintiff was not in acute distress and did not show any mental deficits. [AR 334-335].  The examination showed plaintiff's chest and lungs to appear normal with no wheezing, rhonchi, or rubs. [AR 335].  Plaintiff also had full and normal range of motions in her back and joints without any obvious significant limitations. [AR 335-337].  Dr. Taylor remarked that plaintiff "reports a history of asthma; however there were no specific pulmonary findings." [AR 337].  Dr. Taylor concluded that plaintiff could lift and carry 25 pounds frequently. She found no other physical limitations except that plaintiff "should avoid fumes, dust, pollution, extremes in temperature, gases and chemicals due to history of asthma." [AR 338].

If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record.  Batson v. Comm'r of

5

1   Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149

2   (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

3       After considering the medical record and Dr. Taylor's opinion, the ALJ found that plaintiff retained

4   the RFC to perform work at the light exertional level, with the ability to stand and walk for one hour in an

5   eight-hour workday, and lift and carry twenty pounds occasionally and ten pounds frequently. [AR 24].  The

6   ALJ further found that plaintiff cannot "work in an environment in which she is exposed to concentrated

7   dust, fumes, and other environmental pollutants." [AR 24].

8       Plaintiff concedes that the ALJ cited and discussed Dr. Taylor's opinion, but plaintiff contends that

9   the ALJ ignored Dr. Taylor's opinion that plaintiff "must avoid all exposure to environmental irritants." [JS

10  7; AR 22-23].  Plaintiff's argument misstates the record.  Dr. Taylor did not say that plaintiff "*must*" avoid

11  "*all exposure*" to environmental irritants, but rather that plaintiff  "*should avoid* fumes, dust, pollution,

12  extremes in temperature, gases, and chemicals due to history of asthma."  [AR 338 (emphasis added)].  The

13  ALJ reasonably interpreted that limitation to mean that plaintiff cannot "work in an environment in which

14  she is exposed to concentrated dust, fumes, and other environmental pollutants." [AR 24]. The text of Dr.

15  Taylor's report does not mandate a finding that plaintiff was prohibited from all exposure to dust, fumes,

16  and other environmental pollutants, and nothing in Dr. Taylor's examination findings (or elsewhere in the

17  medical record) suggests that plaintiff's asthma was so severe that she could not tolerate any exposure to

18  environmental irritants.[1]  The ALJ noted, for example, that "there are no documented instances of acute

19  [asthma] attacks or hospitalizations," that Dr. Bellamy described plaintiff's asthma as a "lesser" problem

20  than her other ailments, and that plaintiff successfully attended months of physical therapy conditioning

21

22      [1]    Defendant's reasoning is somewhat different. Defendant contends that no conflict exists

23  between the ALJ's decision and Dr. Taylor's report because the ALJ in fact precluded plaintiff "from
    *all* exposure to *all* environmental irritants." [JS 11 (italics added)(citing AR 24)].  Defendant's

24  contention seems to be that in the phrase "work in an environment in which she is exposed to
    concentrated dust, fumes, and other environmental pollutants" [AR 28], the adjective "concentrated"

25  modifies only the word "dust," but not the words "fumes" or "environmental pollutants." In other

26  words, defendant contends that the ALJ found that plaintiff cannot work in an environment in which
    she is exposed to (1) "concentrated dust," (2) "fumes," and (3) "other environmental pollutants."

27  If defendant's interpretation is accepted, plaintiff's argument fails.  However, it is not necessary to
    adopt defendant's construction of the ALJ's decision to conclude that there is no material conflict

28  between Dr. Taylor's opinion and the ALJ's RFC finding.

1  sessions that increased her endurance and functional ability. [See AR 27].  Accordingly, the ALJ did not err

2  in evaluating Dr. Taylor's opinion or in finding that plaintiff cannot "work in an environment in which she

3  is exposed to concentrated dust, fumes, and other environmental pollutants."[2] [AR 24].

4  　　　Plaintiff does not contend that the ALJ improperly evaluated Dr. Taylor's opinion in any other

5  respect. Accordingly, plaintiff's argument that the ALJ wrongly rejected Dr. Taylor's opinion lacks merit.

6  　　**Plaintiff's subjective testimony**

7  　　　Plaintiff contends that the ALJ erred by failing to provide legally sufficient reasons for rejecting

8  plaintiff's subjective testimony. [JS 12-24; AR 12].

9  　　　If the record contains objective evidence of an underlying physical or mental impairment that is

10  reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all

11  subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

12  2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a),

13  416.929(a) (explaining how pain and other symptoms are evaluated).   Absent affirmative evidence of

14  malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's

15  subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc.

16  Sec. Admin., 533 F.3d 1155, 1160-1161  (9th Cir. 2008); Moisa, 367 F.3d at 885.  "In reaching a credibility

17  determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct,

18  daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d

19  1219, (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility

20  findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

21  testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d

22  at 885.  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial

23  evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

24  

25  　　[2]　　The ALJ found that plaintiff's RFC did not preclude her from performing two of her past
26  relevant jobs as classified in the Dictionary of Occupational Titles ("DOT"): word processor (DOT
   job number 203.582-058) and clerk typist (DOT job number 203.362-010). [AR 28].  According to
27  job information in the DOT, neither of those jobs as generally performed involves exposure to
   weather, extreme cold or heat, wetness, humidity, atmospheric conditions, or other environmental
28  conditions.   Thus, even if the ALJ overstated plaintiff's ability to withstand exposure to
   environmental irritants, any error would be harmless.

2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms).   The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

In evaluating plaintiff's credibility, the ALJ considered whether plaintiff's testimony was supported by the objective medical evidence, her relatively conservative and effective treatment, the lack of documentation of disabling side effects from medication, the ALJ's own observation of plaintiff,  and evidence regarding plaintiff's daily activities. [AR 24-28].

First, the ALJ permissibly considered the objective medical evidence in assessing plaintiff's credibility.  See 20 C.F.R. § 404.1529(c)(1) & (2)(permitting consideration of medical history, medical signs and laboratory findings, and objective medical evidence when determining the extent and impact of alleged pain); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ correctly determined that there are few medical records to support plaintiff's medical complaints. [AR 26].  Her treatment records from Kaiser Permanente in 2006 show no deficits in plaintiff's range of motion or other evidence of serious lumbar spine disease. [AR 22, 26, 187].  Dr. Taylor found that

8

plaintiff has "full range of motion of all joints without any obvious significant limitations." [AR 26, 337]. The ALJ noted the lack of medical evidence reflecting serious asthma symptoms such as acute attacks or hospitalizations. [AR 27]. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)(holding that the ALJ permissibly discredited the claimant's subjective complaints where the objective evidence did not corroborate the severity of the alleged symptoms). The ALJ also noted that Dr. Bellamy, a pulmonary specialist, said that plaintiff's shortness of breath on exertion was more likely due to plaintiff's obesity and poor conditioning than to her asthma, which he diagnosed as "intermittent, in remission at present." Dr. Bellamy therefore saw no reason for plaintiff to undergo pulmonary rehabilitation. [AR 22, 27, 196]. The ALJ remarked that no treating source "has observed the various physical problems the claimant alleges, nor has any treating or examining source assessed her with functional limitations to the degree she alleges." [AR 26].

The objective medical record also does not support plaintiff's contention that she suffers from a disabling mental impairment. The ALJ noted that plaintiff had not undergone any mental health treatment. [AR 23]. In January 2007, plaintiff underwent a consultative psychiatric evaluation by Dr. Ali Makhani. [AR 23, 329]. Plaintiff said that her main complaint is her depression caused by her own physical problems, but she is not taking any psychiatric medication. [AR 329]. Plaintiff's cognition, orientation, memory, concentration, insight, and judgment were all found to be intact. [AR 331]. Plaintiff was also found to be intellectually and psychologically capable of performing activities of daily living. [AR 332]. Although Dr. Makhani diagnosed plaintiff with depressive disorder, not otherwise specified, he assessed her to be able to relate with the public, co-workers and supervisors, and to be able to handle the stresses and demands of a job. [AR 23, 331-332]. The ALJ permissibly considered such findings in assessing plaintiff's credibility. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Second, the ALJ properly considered plaintiff's positive reaction to treatment. [AR 22]. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled with medication or treatment, it is not disabling."). From July 2006 through November 2006, plaintiff attended physical therapy sessions with a respiratory therapist about three times a week. Those sessions involved

bicycle, treadmill, and exercise activities. Progress reports indicate that plaintiff made satisfactory progress towards achieving her goals of increasing endurance and functional ability and decreasing fatigue and shortness of breath. [AR 22, 206-328]. On October 23, 2006, for example, plaintiff pedaled for 30 minutes on a recumbent bicycle with 3.0 resistance, walked for 30 minutes on a treadmill at a speed of 1.6 miles per hour and a 1.0 incline, performed two sets, consisting of ten repetitions each, of seated arm curls, front shoulder raises, bar stretches, shoulder-pectoral stretches, and, finally, upper trapezius stretches. [AR 218-219]. During the hearing, plaintiff agreed with the ALJ's statements that she was "placed on a physical therapy program because you were really out of shape," and that "[t]hey found that your breathing actually improved greatly as they got you more conditioned." [AR 47]. Plaintiff added that she had "been using some of the breathing exercises that they prescribed and it has been helpful." [AR 47]. She also said that she occasionally went swimming. [AR 47-48]. The ALJ noted that plaintiff's participation in the respiratory therapy is "inconsistent with her claims of significant physical disability. Presumably, if the claimant was as disabled as she alleges, she would not have been able to successfully participate in conditioning therapy." [AR 27].

Third, the ALJ permissibly considered the absence of evidence that plaintiff required narcotic pain medication or experienced debilitating side-effects from medication. [AR 27]. See 20 C.F.R. § 404.1529(c)(3)(iv) (providing that the effectiveness and side effects of medication will be considered). The ALJ observed that "[t]here is no credible evidence of regular usage of strong medication to alleviate pain that would significantly impact the claimant's ability to do basic work activities or evidence in the medical record of any significant side effects." [AR 27]. While the ALJ believed plaintiff has medical physical impairments that would cause pain, he found that her lack of regular usage of strong medication for the pain indicated that "the intensity and persistence of the symptoms alleged by the claimant appears exaggerated." [AR 27]. See Osenbrock, 240 F.3d at 1166 (holding that the ALJ properly rejected the claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain").

Fourth, the ALJ also properly considered his own observations of plaintiff in assessing her credibility. Although the ALJ may not "rely on his own observations of the claimant at the hearing as the sole reason for rejecting the claimant's complaints," the ALJ may use "ordinary techniques of credibility

evaluation," including the ALJ's observations of plaintiff's demeanor, when assessing plaintiff's credibility. Tonapetyan, 242 F.3d at 1148 (citing Fair, 885 F.2d at 604 n.5).   The ALJ noted in his decision how, during plaintiff's testimony, her "thoughts did not seem to wander and all questions were answered alertly and appropriately." [AR 27].  The ALJ was entitled to consider plaintiff's conduct at the hearing as one factor supporting his negative credibility evaluation of plaintiff.  See Morgan, 169 F.3d at 600 ("The inclusion of the ALJ's personal observations does not render the decision improper.").

Fifth, the ALJ noted inconsistencies between plaintiff's allegations of pain and disability and her activities of daily living. [AR 27].  During the hearing, plaintiff testified that she not only experienced pain in her hands, fingers, hips, and shoulders but that she could sit for no longer than fifteen minutes before experiencing "severe pain" in her neck and back and needed to lie down every one-and-a-half to two hours. [AR 25, 48-49].  However, plaintiff also testified that she was able to drive, go to the movies, and attend church services, which the ALJ rationally deemed inconsistent with the severe functional limitations plaintiff alleged. [AR 27, 45].   Despite her testimony that she had pain in most of her joints, plaintiff also testified that she could cook, and she told Dr. Makhani that she performed light household chores. [AR 44-45, 27, 330].  As noted above, plaintiff was able to attend multiple physical therapy sessions a week for several months. Therefore, the ALJ did not err in rejecting the alleged severity of plaintiff's subjective complaints based in part her daily activities.  See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)(holding that the claimant's testimony that she did the laundry, cleaned the house, and shopped for groceries was inconsistent with claim of severe back impairment); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(per curiam)(holding that the ALJ did not err in concluding that the claimant's ability to cook, go to the store, and drive indicated that he could perform light work).

As the ALJ noted, since plaintiff's claim of disability was based primarily on her subjective symptoms, her credibility was a "material factor" in his decision, and "the inconsistencies and contradictions in the evidence as well as the general lack of medical support for her allegations lead the undersigned to conclude that the claimant is wholly not credible." [AR 27].  The ALJ articulated specific, convincing reasons to support his credibility finding.

///

///

11

1

**Conclusion**

2      For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

3   is free of legal error.  Accordingly, the Commissioner's decision is **affirmed**.

4   **IT IS SO ORDERED.**

5   DATED:   July 15, 2009

6                                                    _____
                                                     ANDREW J. WISTRICH

7                                                    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28